Gary F. Karnedy
PRIMMER PIPER EGGLESTON & CRAMER
Professional Corporation
150 South Champlain Street
P.O. Box 1489
Burlington, Vermont 05401
Telephone: (802) 864-0880
Facsimile: (802) 864-0328
Email: gkarnedy@primmer.com

Tonia Ouellette Klausner (*pro hac vice* pending)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7700
Facsimile: (212) 999-5899
Email: tklausner@wsgr.com

*Counsel for Defendant Scribd Inc.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, on behalf of its members and itself, and HEIDI VIENS,<br><br>Plaintiffs,<br><br>v.<br><br>SCRIBD INC.,<br><br>Defendant. | Case No. 2:14-cv-00162-wks<br><br>**ORAL ARGUMENT REQUESTED** |

## <u>MOTION TO DISMISS</u>

Defendant Scribd, Inc. ("Scribd") hereby submits this motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint with prejudice for failure to state a claim. In support of its motion, Scribd submits the following memorandum of law.

1

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT SCRIBD INC.'S MOTION TO DISMISS
### PRELIMINARY STATEMENT

Defendant Scribd Inc. ("Scribd"), a start-up website launched by three friends from a San Francisco apartment in 2007, is an online publishing platform hosting digital books and documents supplied by third parties. As plaintiffs recognize in their Complaint, Scribd has no physical retail outlet—it operates no physical facility open to the public. The content Scribd makes available to the public can only be obtained on the Scribd website, or through software applications ("apps") that can be downloaded on mobile devices.

Despite Scribd's lack of a physical, public facility, plaintiffs have sued it claiming Scribd discriminates against the visually impaired in violation of Section 12182 of the Americans with Disabilities Act ("ADA"), which on its face applies only to owners, lessors or operators of "place[s] of public accommodation[.]" 42 U.S.C. § 12182(a). The statute provides an exhaustive list of categories of such "places," such as hotels, restaurants, bars, theaters, shops, museums, schools, hospitals, libraries and professional offices. *Id.* § 12181(7). Each of these places share one obvious attribute: they are *actual, physical facilities* open to the public. Recognizing this, the Department of Justice ("DOJ") in its regulations implementing the statute, defined "place of public accommodation" as "a facility[.]" 28 C.F.R. § 36.104. The ADA does not mention online companies, apps or any other businesses that at the time the statute was enacted were operating without a connection to a tangible physical place open to the public (such as newspaper and magazine publishers, television networks, mail order businesses, or in-home service providers). The statute simply does not apply to an online business like Scribd.

Plaintiffs ask this Court to interpret the ADA's "place of public accommodation" language to extend the reach of the ADA to any business that offers goods or services to the public, regardless of whether it owns, leases or operates a "place." Given the statutory text, dozens of Circuit and District Court decisions from around the country (including the Eastern District of New York) have rejected similar invitations to legislate from the bench. These courts

2

have ruled that to be subject to Section 12182 of the ADA, the good or service at issue must have a connection with a physical space—an approach the Second Circuit has suggested it would follow. Indeed, all but one case has rejected the argument that an entirely virtual business is a "place of public accommodation."[1]

Scribd is sympathetic to plaintiffs' concerns. Before this suit was filed it had begun working on changes to its service that will greatly enhance the ability of the visually impaired to use it. And Scribd continues to explore additional changes within its limited means that would allow anyone using a screen reader to better navigate its website. But plaintiffs' interpretation of the ADA would sweep far beyond Scribd and to the entire online industry, forcing massive expenditures of resources without the balance and clear standards that would emerge from the legislative process. However laudable plaintiffs' goals, this is not the appropriate forum for that dramatic policy shift.

As it stands, Section 12182 of the ADA does not apply to website operators or other media providers whose goods or services are not made available to the public through a physical location open to the public. Because plaintiffs have not alleged facts showing that Scribd owns, leases, or operates a "place of public accommodation" as defined by the ADA, the Complaint fails to state a claim under 42 U.S.C. § 12182 and must be dismissed.

## BACKGROUND

***The ADA.*** The ADA was modeled on the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, which prohibits discrimination against disabled individuals by (i) any programs or activities

---

[1] *Compare Jancik v. Redbox Automated Retail, LLC*, No. SACV 13-1387-DOC (RNBx), 2014 U.S. Dist. LEXIS 67223 (C.D. Cal. May 14, 2014); *Steelman v. Fla.*, No. 6:13-cv-123-Orl-36DAB, 2013 U.S. Dist. LEXIS 36814 (M.D. Fla. Feb. 19, 2013); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023-24 (N.D. Cal. 2012); *Ouellette v. Viacom*, No. CV 10-133-M-DWM-JCL, 2011 U.S. Dist. LEXIS 52570 (D. Mont. Mar. 31, 2011); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011); *Earll v. eBay, Inc.*, No. 5:11-cv-00262-JF (HRL), 2011 U.S. Dist. LEXIS 100360 (N.D. Cal. Sept. 6, 2011); *Access Now, Inc. v. Sw. Airlines, Co.,* 227 F. Supp. 2d 1312 (S.D. Fla. 2002), *appeal dismissed*, 385 F.3d 1324 (11th Cir. 2004); *with Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012).

conducted by the federal government or U.S. Postal Service, and (ii) any programs or activities receiving federal funding. 29 U.S.C. § 794(a). In 1990, before the Internet, Congress enacted the ADA to impose similar prohibitions on employers (Title I), public services (Title II), and "public accommodations" (Title III). *See, e.g.*, H.R. Rep. No. 101-485, at 99 (1990), 1990 U.S.C.C.A.N. 303, 381-82 ("Section 504 of the Rehabilitation Act of 1973 prohibits Federal agencies and recipients of Federal financial assistance from discriminating against persons with disabilities. The purpose of [T]itle III of the legislation is to extend these general prohibitions against discrimination to privately operated public accommodations . . . ."). In general, Title III of the ADA prohibits discrimination on the basis of disability "by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Among the purposes of the Act is "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities[.]" *Id.* § 12101(b)(2). Thus the statute itself contains a clear and detailed definition of "public accommodation":

The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

4

<blockquote>

(I)    a park, zoo, amusement park, or other place of recreation;

(J)    a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K)    a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L)    a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

</blockquote>

*Id.* § 12181(7).

Newspaper, magazine and book publishers, television and radio stations, and a host of other private entities that offer goods and services to the public but not at a physical space they operate are not included in this list. Thus courts have readily concluded that the services of such entities are not subject to Title III. *See, e.g.*, *Stoutenborough v. NFL*, 59 F.3d 580, 583 (6th Cir. 1995) (major television networks, a local television station and NFL did not fall within any of the twelve categories of public accommodations, even though they plainly offered entertainment and other services); *Treanor v. Wash. Post Co.*, 826 F. Supp. 568, 569 (D.D.C. 1993) (newspapers are not places of public accommodation because they are dissimilar to the other facilities mentioned in Section 12181); *Torres v. AT&T Broadband, LLC*, 158 F. Supp. 2d 1035, 1037-38 (N.D. Cal. 2001) (operator of a subscription cable television service not operator of place of public accommodation because cable television was neither listed among the categories of public accommodations, nor similar to them).

***The Internet.*** The Internet is a worldwide network of networks connecting computers to information stored on other computers. *See, e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007). An individual can use a web browser to retrieve information from the webpages of a website. A website is a collection of data (including text, and often images) that is stored on one or more computers. *See id.* A web server, which is a remote computer or computer program, will transmit this data to another computer when requested by a web browser. http://dictionary.reference.com/browse/web%20server?s=t (last visited Oct. 27, 2014). Although colloquially people say they "went" to a website, that is just a metaphor for the experience of using a computer to request and receive computer data stored on another computer.

5

***Scribd.***  Scribd is a California-based, digital software platform that publishes over forty million electronic documents, including e-books, academic papers, legal filings, and other user-uploaded digital documents.  *See* Compl. ¶ 15.  Scribd's publication platform may be accessed exclusively over the Internet via web browsers, or through Scribd's mobile software applications available for download on Apple, Android, and Amazon devices.  *Id.* ¶ 16.  As the Complaint recognizes, Scribd operates a website and apps, *i.e.*, servers and software.  *Id.* ¶ 27.  Plaintiffs do not and cannot allege that Scribd operates any retail facility open to the public for access to its collection of digital publications.

***The Complaint.***  Plaintiffs allege that Scribd violates Title III of the ADA because its website and mobile apps use "an exclusively visual interface that is inaccessible to the blind" and because Scribd has not programmed its online publishing platform and mobile apps in a certain way.  Compl. ¶¶ 18, 21.  Their claim rests on the allegation that Scribd "is a place of public accommodation as defined by the ADA[.]"  *Id.* ¶ 26.  Recognizing that an online publishing company does not fit on the list of categories identified by Congress as public accommodations, plaintiffs string together isolated phrases from that list, taken out of context, to allege that Scribd "is, or is part of, a 'place of exhibition or entertainment,' a 'sales or rental establishment,' a 'service establishment,' a 'library,' a 'gallery,' and/or a 'place of public display or collection.'"  *Id.* (citing 42 U.S.C. § 12181(7)(C), (E), (F), (H)).  But as plaintiffs go on to acknowledge, Scribd is not the owner, lessee or operator of any such place; it "owns, operates, maintains, and/or leases the website located at http://www.scribd.com and the Scribd apps for Apple, Kindle, and Android devices."  *Id.* ¶ 27.  There simply is no allegation that Scribd inhibits equal access to services offered by, or in connection with, any concrete, brick-and-mortar "place of public accommodation."

Nor could there be.  Although Scribd describes itself metaphorically as a "personal digital library," as plaintiffs' allegations recognize, it is not an actual "library" as that term has been commonly understood for centuries.  There are no allegations that Scribd operates any public building, storefront or physical space where books, magazines, and other materials—paper or

electronic— are available for the public to peruse and borrow. Rather, as plaintiffs acknowledge, Scribd is an exclusively Internet-based publishing company and its website and apps are the services it offers. Compl. ¶¶ 15, 27.

## ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (courts are "not bound to accept as true a legal conclusion couched as a factual allegation[.]") (internal marks and citation omitted). Where it is clear from the facts alleged that no claim exists as a matter of law, dismissal is appropriate. *See, e.g., Davis v. Vt., Dep't of Corrections*, 868 F. Supp. 2d 313, 322 (D. Vt. 2012) (dismissing ADA claims where based on the well-plead allegations of the complaint they were barred as a matter of law); *Bobrowsky v. Curran*, 333 F. Supp. 2d 159, 163 (S.D.N.Y. 2004) (same).

I. **SCRIBD DOES NOT OPERATE A PLACE OF PUBLIC ACCOMODATION SUBJECT TO TITLE III OF THE ADA**

A. **The Plain Text of Title III Makes Clear that It Only Regulates Owners, Lessees, and Operators of Physical Spaces that are Open to the Public**

As with all questions of statutory construction, the first step "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. [The court's] inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (citation omitted); *accord, e.g., Conservation Law Found. v. Hannaford Bros. Co.*, 327 F. Supp. 2d 325, 330 (D. Vt. 2004) (Sessions III, C.J.), *aff'd*, 139 Fed. Appx. 338 (2d Cir. 2005).

Here the statute's language is clear and unambiguous. Title III by its terms applies only to "any person who owns, leases (or leases to), or operates *a place of public accommodation*." 42 U.S.C. § 12182(a) (emphasis added). By using the language emphasized above, Congress

deliberately chose not to regulate all businesses affecting commerce that offered goods or services to the public. Instead, it specifically limited the scope of Title III to persons and entities exercising control over a "place" falling within one of the enumerated categories of public accommodations. It is well-established that Courts must give effect to every word used by Congress in a statute. *See, e.g., Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *United States v. Awan*, 607 F.3d 306, 313 (2d Cir. 2010). In order to give effect to the word "place" (commonly understood as a "space, area, or spot, set apart or used for a particular purpose: *a place of worship; a place of entertainment*," DICTIONARY.COM, http://dictionary.reference.com/ browse/place?s=t (last visited Oct. 23, 2014)), "place of public accommodation" must be construed as a physical space open to the public. If any business that offers goods or services to the public is subject to the ADA, then Congress' use of the word "place" is improperly rendered superfluous. *See, e.g., Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 489 n.13 (2004) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal marks and citations omitted)).

In addition to carefully delineating the prohibitions section of Title III, Congress also carefully crafted an exhaustive list of categories of private commercial entities that qualify as "public accommodations" for purposes of Title III. 42 U.S.C. § 12181(7). These categories repeatedly reference the word "place." *See id.* Moreover, as numerous courts have observed, "[a]ll the items on this list ... have something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000); *see Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612-13 (3d Cir. 1998) (limiting the ADA to physical locations "is in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places."); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ("The clear connotation of the words in § 12181(7) is that a public accommodation is a physical place. Every term listed in § 12181(7) and subsection (F) is a

physical place open to public access."). Thus, as the only District Court within the Second Circuit to address the issue recognized, "the plain language of the statute indicates that 'a public accommodation is a physical place. Every item listed in 12181(7) and subsection (F) is a physical place open to public access.'" *Rome v. MTA/N.Y.C. Transit*, No. 97-CV-2945 (JG), 1997 U.S. Dist. LEXIS 23436, at *14 (E.D.N.Y. Nov. 18, 1997) (quoting *Parker*, 121 F.3d at 1014).[2] Because the language of the statute is clear and unambiguous, the court need go no further.

But even if there were any doubt as to whether Congress intended to encompass businesses unconnected to any physical space open to the public, it is removed by the doctrines *noscitur a sociis* and *ejusdem generis*. As explained by the Second Circuit, "the meaning of doubtful terms or phrases may be determined by reference to their relationship with other associated words or phrases (*noscitur a sociis*). In addition, where general words are accompanied by a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated (*ejusdem generis*)." *City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 401-02 (2d Cir. 2008) (internal marks and citations omitted).

Here, all specific examples of entities classified as "public accommodations" in Section 12181(7) operate at concrete, physical locations open to the public. Thus, "[t]o interpret these terms as permitting a place of accommodation to constitute something other than a physical place is to ignore the text of the statute and the principle of *noscitur a sociis*." *Parker*, 121 F.3d at 1014; *accord Ford*, 145 F.3d at 614 (pursuant to the doctrine of *noscitur a sociis*, "public accommodation" is unambiguous in light of the "litany of terms [in Section 12181(7)] refer[ing]

---

[2] *Accord Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 952 n.3 (N.D. Cal. 2006) ("The examples listed by the ADA as examples of places of public accommodation provide support for the notion that such an entity must be a physical place."); *Access Now*, 227 F. Supp. 2d at 1318 ("[T]he plain and unambiguous language of the ADA" shows "Congress' clear intent that Title III of the ADA governs solely access to physical, concrete places of public accommodation.").

to places with resources utilized by physical access."); *Weyer*, 198 F.3d at 1114 (same).

Similarly, although the categories of places listed by Congress include the general catchalls relied upon by plaintiffs (other "place of exhibition or entertainment," or other "sales or rental establishment," or other "service establishment," or other "place of public display or collection"), these general phrases accompany specific examples, none of which is similar to the operator of servers and software that enable an online publishing platform. *See Access Now*, 227 F. Supp. 2d at 1318-19 (the general terms in Section 12181(7) "are limited to their corresponding specifically enumerated terms, all of which are physical, concrete structures .... Thus, this Court cannot properly construe 'a place of public accommodation' to include [defendant's] Internet website[.]") (citations omitted).

Construing "place of public accommodation" as a physical space also is supported by the DOJ's implementing regulations, which define "[p]lace of public accommodation" as "*a facility* operated by a private entity whose operations affect commerce and fall within at least one" of the statutorily enumerated categories. 28 C.F.R. § 36.104 (emphasis added). The same regulation defines "[f]acility" as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." *Id.* In other words, to qualify as a place of public accommodation, the entity must both operate a concrete facility and those operations must fall into a specified category of public accommodation. *See Stoutenborough*, 59 F.3d at 583 (DOJ regulations "clarify" that a "place" is limited to a physical "facility"); *Ford*, 145 F.3d at 613 ("Confining 'public accommodation' to places is also in keeping with the Dept. of Justice's regulations to this effect[.]"); *Access Now*, 227 F. Supp. 2d at 1318 (DOJ's "applicable federal regulations" show "Congress' clear intent

that Title III of the ADA governs solely access to physical, concrete places of public accommodation.").[3]

Finally, while Congress amended the Rehabilitation Act on which the ADA is based to extend its scope to federal websites, it has not amended the ADA to cover private website operators or other businesses not connected to any physical place open to the public. In 1998, Congress amended the Rehabilitation Act to add a section specifically covering "[e]lectronic and information technology," and directed the Federal Architectural and Transportation Barriers Compliance Board to develop regulations implementing the amended statute. 29 U.S.C. §§ 794d(a)(1)(A)(ii), 794d(a)(2)(A). The Board thereafter published a Final Rule on Electronic and Information Technology Accessibility Standards in December 2000, which contains specific rules as to how federal websites must be made accessible to members of the public who have disabilities. *See* 36 C.F.R. § 1194.22. In 2008, Congress amended the ADA to respond to a series of court decisions that had interpreted the definition of disability narrowly. *See* The Americans with Disabilities Act: Application to the Internet, CRS Report for Congress (July 22, 2010), *available at* http://www.nacua.org/documents/ADAInternet.pdf. By that time multiple Circuit and District Courts had interpreted "place of public accommodation" as limited to physical spaces open to the public and not including websites unconnected to a physical space. (*see supra* at 7-8, *infra* at 11-12, 14-16). And although it has since repeatedly held hearings about the applicability of the ADA to private websites, Congress has chosen not to amend Title

---

[3] Despite its own definition, the DOJ has taken the position in amicus briefs and other commentary that public accommodations encompass virtual businesses. However, it is well established that such statements are entitled to little if any deference. *See, e.g.*, *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). Here they should be given none since they are contrary to the plain language of the statute and the DOJ's own regulatory definition. *See, e.g.*, *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 105-06 (2d Cir. 1999) (declining to defer to agency interpretive guidelines at odds with the plain language of the statute itself); *Ford*, 145 F.3d at 613 (declining to defer to DOJ Title III interpretive statements as "'manifestly contrary' to the plain meaning of Title III[.]") (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984)).

III to extend it to mere operators of commercial websites.[4]  Congress' inaction in the face of extensive case law and hearings on the topic demonstrates assent with those precedents.  The Court should reject plaintiffs' attempt to write new law via the judiciary.

**B.     The Overwhelming Weight of Judicial Authority Has Concluded That a Place of Public Accommodation Is a Physical Facility Open to the Public**

In light of the plain language of Title III, it is not surprising that virtually every court to consider the issue has concluded that a "place of public accommodation" for purposes of Title III is limited to an actual physical place.  As noted above, the Third, Sixth, and Ninth Circuits as well as the Eastern District of New York have all held that a "place of public accommodation" subject to Title III is an actual physical space where goods and services are available to the public.  *Weyer*, 198 F.3d at 1114 (places of public accommodations "are actual, physical places where goods or services are open to the public"; employer's insurance plan administrator not place of public accommodation); *Ford*, 145 F.3d at 614 (interpreting "place of public accommodation" as limited to physical locations and explaining, that "[t]he litany of terms . . . refer to places with resources utilized by physical access.");[5] *Parker*, 121 F.3d at 1010-11 ("As is

---

[4] *See Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing Before the H. Subcomm. on the Constitution of the House Comm. On the Judiciary*, 106th Cong., 2d Sess. 65-010 (2000), *available at* http://commdocs.house.gov/committees/ judiciary/hju65010.000/hju65010_0f.htm; *Achieving the Promises of the Americans with Disabilities Act in the Digital Age – Current Issues, Challenges, and Opportunities: Hearing Before the H. Subcomm. on the Constitution, Civil Rights, and Civil Liberties of the H. Comm. On the Judiciary*, 111th Cong., 2d Sess. 111-95 (2010), *available at* http://www.gpo.gov/ fdsys/pkg/CHRG-111hhrg56070/html/CHRG-111hhrg56070.htm; *Innovation and Inclusion: The Americans with Disabilities Act at 20: Hearing Before the S. Subcomm. on Communications, Technology and the Internet of the S. Comm. On Commerce, Science, and Transportation*, 111th Cong., 2d Sess. 111-986 (2010), *available at* http://www.gpo.gov/fdsys/pkg/CHRG-111shrg66489/pdf/CHRG-111shrg66489.pdf.

[5] The Third Circuit also relied upon the fact that limiting places of public accommodations for purposes of Title III to actual physical places is consistent with the interpretation given by Courts to Title II of the Civil Rights Act of 1964's prohibition on racial and religious discrimination by "place[s] of public accommodation." *Ford*, 145 F.3d at 614 (citing cases refusing to apply Title II to membership organizations unconnected to any physical facility).

evident by § 12187(7), a public accommodation is a physical place . . . ."); *Stoutenborough*, 59 F.3d at 583 (concluding that place of public accommodation is a physical facility based on plain language of the statute and regulations defining term as a "facility"; NFL and media defendants not places of public accommodation); *Rome*, 1997 U.S. Dist. LEXIS 23436, at *14-15.

Under these decisions—as well as under the interpretation followed by the Eleventh Circuit—there must be a nexus between the good or service at issue and a place of public accommodation for there to be a claim under the ADA, even if the particular good or service was not obtained there. *See, e.g., Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1283-84 & n.8 (11th Cir. 2002) (game show hotline subject to ADA because it was a screening mechanism of a "concrete space"; sufficient nexus between challenged service and premises of the public theater in which defendants' game show was held); *Ford*, 145 F.3d at 612-13 (because plaintiff received her insurance benefits from her employer, "she had no nexus to MetLife's 'insurance office' and thus was not discriminated against in connection with a public accommodation."); *Nat'l Fed'n of the Blind*, 452 F. Supp. 2d at 955 (plaintiff stated a claim against brick and mortar retailer based on allegation that inaccessibility of Target.com impedes the full and equal enjoyment of goods and services offered in Target stores, but failed to state a claim based on information and services available on website unconnected to Target stores).[6]

While the Second Circuit has not addressed whether places of public accommodation under Title III are limited to physical spaces, it has suggested that it would so hold. First, in *Pallozzi v. Allstate Life Ins. Co.*, after concluding that an insurance office fell squarely within Congress' definition of "public accommodation," it held that "an entity covered by Title III is not only obligated by the statute to provide disabled persons with physical access, but is also

_____

[6] *Accord Parker*, 121 F.3d at 1010-11 (no claim under ADA where plaintiff obtained insurance policy from employer; "There is, thus, no nexus between the disparity in benefits and the services which MetLife offers to the public from its insurance office."); *Weyer*, 198 F.3d at 1114 (Although an "insurance office" is a place where the public generally has access, employer-provided insurance does not bear a sufficient connection to a physical insurance office).

prohibited from refusing to sell them its merchandise by reason of discrimination[.]" 198 F.3d 28, 33 (2d Cir. 1999). The Court noted that its decision was consistent with rulings in the Sixth and Third Circuits that endorsed the requirement of a "nexus" between the good or service at issue and a physical place of public accommodation. *Id.* at 32 n.3 (citing *Parker* and *Ford*). In a decision issued a few days later, the Second Circuit stated: "While we have recently held in [*Pallozzi*], that an insurance office in its dealings with the public is a 'place of public accommodation' and is regulated by Title III, it does not necessarily follow that Title III is implicated when an insurance company issues a disability policy to an employer for the benefit of its employees." It again cited with approval the Sixth Circuit's *Parker* decision for the proposition that because the plaintiff received the good (her insurance policy) from her employer "and 'had no nexus to [defendant's] insurance office,' she 'was not discriminated against in connection with a public accommodation," and therefore could not state a claim under Title III." *Leonard F.*, 199 F.3d at 107 n.8. Thus the Second Circuit has clearly aligned itself with the Circuit Courts that have given "place of public accommodation" its plain meaning, and refused to apply Title III of the ADA to goods or services offered to the public absent a nexus to a physical place of public accommodation.

Only the First Circuit has concluded (in *dicta* ) that a "place of public accommodation" is not necessarily limited to an actual physical place. *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England*, 37 F.3d 12, 19 (1st Cir. 1994) (remanding "to allow plaintiffs the opportunity to adduce further evidence supporting their view that the defendants [trade association and health plan administrators] are places of 'public accommodation' within the meaning of Title III of the ADA.").[7] However, it did not actually conclude that a business

---

[7] The Seventh Circuit also has implied in *dicta* and without any reasoning that "places of public accommodation" should be read to include non-physical services. *See Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (listing in opinion addressing whether ADA regulates content of insurance policies concluding it does not; "Web site" among examples of public accommodations); *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) (stating in connection with holding that a retirement plan was not a "public accommodation" within the
(continued...)

that does not own, lease or operate a physical location open to the public for access to goods and services *is* a place of public accommodation.  And it did not consider the nexus approach, which is consistent with its decision to remand for further fact-finding.  Further, it has been harshly criticized by subsequent Circuit and District Courts.  *See, e.g., Parker*, 121 F.3d at 1014 ("[*Carparts*] disregarded the statutory canon of construction, *noscitur a sociis.*"); *Ford*, 145 F.3d at 614 ("[T]he First Circuit failed to read the examples of public accommodations that piqued the First Circuit's interest in the context of the other examples of public accommodations."); *Rome*, 1997 U.S. Dist. LEXIS 23436, at *14-15 (the reasoning of *Carparts* is "contrary to the statute.").[8]  In sum, decisions from Circuit Courts around the country overwhelmingly reject the argument that plaintiffs here advance, and the Second Circuit has indicated its agreement with that view.

### C.      Purely Virtual Businesses Are Not Places of Public Accommodation

Taking their cue from the appellate decisions, numerous District Courts have concluded that a business that only offers goods or services over the Internet is not a place of public accommodation subject to Title III:

- In *Ouellette v. Viacom*, 2011 U.S. Dist. LEXIS 52570, at *12-13, the court dismissed Title III claims against Google, YouTube, Myspace and other purely online

---

(...continued from previous page)
meaning of the ADA that the Seventh Circuit in *Mutual of Omaha* had already rejected an interpretation of "public accommodation" as denoting a physical site). The statements by the Seventh Circuit have been roundly regarded as *dicta. See, e.g., Cullen*, 880 F. Supp. 2d at 1023; *Access Now*, 227 F. Supp. 2d at 1319; *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 544 (E.D. Va. 2003), *aff'd*, --- Fed. Appx. ----, 2004 WL 602711 (4th Cir. Mar. 24, 2004).

[8] *Pallozzi* cites *Carparts* and *Mutual of Omaha* for the separate principle that Title III guarantees "more than mere physical access" to places of public accommodation, because the statute governs services "of," rather than merely "in," public accommodations. *See* 198 F.3d at 32-33. This supports the nexus approach adopted by each of the Circuits to conclude that a place of public accommodation itself is limited to a physical space, and has no bearing on the separate question of whether a business unconnected to a physical space open to the public can itself qualify as a "place of public accommodation."

companies. The court rejected plaintiff's argument that these services were places of public accommodations because they operated "online theater[s]." Following the nexus test it concluded that "[s]ervices available on an internet website that have no connection to a physical place of accommodation do not fall within the ADA's 'place of public accommodation requirement.'" *Id.* at *11-12. Because the plaintiff "fail[ed] to identify any actual, physical place where Defendants' services are made available, and fail[ed] to assert any connection between the internet websites he sought to access, and any actual, physical structure or facility through which Defendants' services could be accessed or provided." *Id.* at *13.

- In *Young v. Facebook, Inc.*, 790 F. Supp. 2d at 1114-15, the court dismissed Title III claims against Facebook – operator of a purely online social networking platform. It based its decision on the fact that Facebook operated no physical space where its services were available to the public: "While Facebook's physical headquarters obviously is a physical space, it is not a place where the online services to which [plaintiff] claims she was denied access are offered to the public." *Id.* at 1115. Because its internet services "do not have a nexus to a physical place of public accommodation for which Facebook may be liable under the statute," the Complaint failed to state a claim under Title III of the ADA. *Id.* at 1116.

- In *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d at 1023-24, the court concluded that state law claims based on Netflix's alleged failure to comply with the ADA could not survive a motion to dismiss because the ADA claim was not viable. "Netflix's streaming video library is a website where consumers can access videos with an internet connection.... The Netflix website is not 'an actual physical place' and therefore ... the ADA does not apply to access to Netflix's streaming library." *Id.* at 1024.

- In *Steelman v. Florida*, 2013 U.S. Dist. LEXIS 36814, at *8-9, the court dismissed Title III claims against an online timeshare-exchange network because the service existed only in cyberspace, the defendant did not own or operate any of the

underlying rental properties, and it therefore was not a "place of public accommodation" under the ADA.

- In *Earll v. eBay, Inc.*, 2011 U.S. Dist. LEXIS 100360, the court held that a violation of Title III of the ADA could not serve as a predicate to certain state law claims against eBay, an entirely online service, because "'places of public accommodation' under the ADA are limited to actual physical spaces." *Id.* at *6.

- In *Jancik v. Redbox Automated Retail, LLC*, 2014 U.S. Dist. LEXIS 67223, the court dismissed Title III claims against a defendant that offered digital streaming entertainment content only through its website, because an Internet website is not a "place of public accommodation" subject to Title III. *Id.* at *20-22.

- And in *Access Now v. Southwest Airlines Co.*, the Southern District of Florida dismissed a Title III claim for failure to state a claim based on the plaintiff's allegation that the southwest.com website was itself a place of public accommodation. 227 F. Supp. 2d at 1317-19. "[B]ecause the Internet website, southwest.com, does not exist in any particular geographical location, Plaintiffs are unable to demonstrate that Southwest's website impedes their access to a specific, physical, concrete space such as a particular airline ticket counter or travel agency. Having failed to establish a nexus between southwest.com and a physical, concrete place of public accommodation, Plaintiffs have failed to state a claim upon which relief can be granted under Title III of the ADA." *Id.* at 1321.[9]

---

[9] *See also Noah*, 261 F. Supp. 2d at 543-45 (relying on the "the logic of the statute and the weight of authority" in cases interpreting Title III, and holding that "although a chat room or other online forum might be referred to metaphorically as a 'location' or 'place,' it lacks the physical presence necessary to constitute a place of public accommodation" under Title II of the ADA).

The *only* contrary decision is *National Association of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012). In that case, the plaintiff argued that Netflix's online only streaming television and movie service was "analogous to a brick-and-mortar store or other venue that provides similar services" and therefore was the operator of a place of public accommodation. *Id.* at 200. Relying on *Carparts*, the District Court agreed. It acknowledged the doctrine of *ejusdem generis*, but declined to apply it because "[t]he ADA covers the services 'of' a public accommodation, not services 'at' or 'in' a public accommodation." *Id.* at 201. *But that does not address the relevant question.* If the defendant operates a place of public accommodation, then its services are subject to the ADA, even if obtained without walking into the facility (such as insurance purchased from an insurance office over the phone). But the reverse is not necessarily true—just because a business offers services to the public outside of a public place, that does not mean that the business qualifies as a place of public accommodation under the ADA. The court's word play fails to account for the fact that the statute covers only an owner, lessor or operator of a "place" of public accommodation – not any business that offers goods or services to the public. Scribd respectfully submits that the District of Massachusetts' reasoning is both flawed and unpersuasive, and should be rejected in favor of that of the Third, Sixth, Ninth and Eleventh Circuits and the Eastern District of New York.

**D.      Scribd Does Not Own, Lease or Operate A Place of Public Accommodation and its Publishing Website and Mobile Applications Have No Nexus to One**

Plaintiffs allege that Scribd qualifies as a "place of public accommodation" under the ADA, but offer no factual allegations that support that legal conclusion. Compl. ¶¶ 26-27; *see also Twombly*, 550 U.S. at 555 ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation[.]") (internal marks and citation omitted). Plaintiffs do not allege that Scribd owns, leases or operates any physical place that provides goods, services or other accommodations to the public. Although Scribd describes itself metaphorically as a "digital library," there are no allegations that it operates an actual physical structure in which books, magazines, and other items can be accessed. *See Noah*, 261 F. Supp. 2d at 544-45 ("[A]lthough

18

a chat room or other online forum might be referred to metaphorically as a 'location' or 'place,' it lacks the physical presence necessary to constitute a place of public accommodation ...."); *Cullen*, 880 F. Supp. 2d at 1023-24 (Netflix's video "library" is a website, not "an actual physical place" subject to the ADA). Instead, as plaintiffs acknowledge, Scribd operates a website, and its services are available only on the Internet through its website and mobile applications. *See, e.g.*, Compl. ¶¶ 1, 18-21, 24, 27-29. But a website itself is not a place of public accommodation. It is not a place at all, but merely a collection of data stored on computers that can be transmitted to other computers in response to a request by a web browser. Because a website standing alone is not a physical facility open to the public, it is not a place of public accommodation subject to Title III. *See Access Now, Ouellette, Young, Earll, Cullen, Steelman, Jancik; see also Ford, Parker, Weyer, Rome.*

Moreover, like television networks, newspaper publishers, and cable TV providers, Scribd offers media services available to the public, but not at any public facility or location. Thus, like these other media businesses Scribd does not fall within any of the categories specified by Congress as public accommodations. *See Stoutenborough*, 59 F.3d at 583; *Treanor*, 826 F. Supp. at 569; *Torres*, 158 F. Supp. 2d at 1037-38.

Finally, there are no allegations that Scribd's website and software apps – the services at issue – have any nexus to a place of public accommodation. To the contrary, they are by definition goods and services connected only to private computers. While Scribd's office headquarters is obviously a physical location, plaintiffs do not, and could not, allege that such facility is a "place of public accommodation." *See, e.g., Young*, 790 F. Supp. 2d at 1115 (Facebook's physical headquarters is not a place of public accommodation).

In sum, plaintiffs have not and cannot state a claim against Scribd under Title III of the ADA.

## CONCLUSION

For these reasons, Scribd respectfully requests that the Court dismiss plaintiffs' Complaint with prejudice and grant such further and other relief as the Court deems just and proper.

Dated:  October 29, 2014

Respectfully submitted,

By:  s/ Gary F. Karnedy

Gary F. Karnedy
PRIMMER PIPER EGGLESTON & CRAMER
Professional Corporation
150 South Champlain Street
P.O. Box 1489
Burlington, Vermont 05401
Telephone: (802) 864-0880
Facsimile: (802) 864-0328
Email: gkarnedy@primmer.com

Tonia Ouellette Klausner (*pro hac vice* pending)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7700
Facsimile: (212) 999-5899
Email: tklausner@wsgr.com

*Counsel for Defendant Scribd Inc.*

*1844930.1*