Gary F. Karnedy
PRIMMER PIPER EGGLESTON & CRAMER
Professional Corporation
150 South Champlain Street
P.O. Box 1489
Burlington, Vermont 05401
Telephone: (802) 864-0880
Facsimile: (802) 864-0328
Email: gkarnedy@primmer.com

Tonia Ouellette Klausner (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7700
Facsimile: (212) 999-5899
Email: tklausner@wsgr.com

*Counsel for Defendant Scribd Inc.*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, on behalf of its members and itself, and HEIDI VIENS,<br><br>      Plaintiffs,<br><br>    v.<br><br>SCRIBD INC.,<br><br>      Defendant. | Case No. 2:14-cv-00162-wks |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT SCRIBD INC.'S MOTION TO DISMISS</u>**

Scribd's Motion to Dismiss ("Def. Br.") urged the Court to construe Title III of the Americans with Disabilities Act ("ADA") consistent with its plain language, and its construction by the Third, Sixth, Ninth, and Eleventh Circuits, as well as the Eastern District of New York and numerous other District Courts from around the country. As these courts have all found, in enacting Title III of the ADA, Congress expressly limited its application to persons who (1) own, lease or operate *a physical place* that (2) falls within one of twelve enumerated categories of "public accommodations," which are all actual physical places open to the public.

In their opposition ("Opp."), plaintiffs ask this Court to ignore this overwhelming body of authority as "non-binding" and endorse a different construction that would dramatically expand the ADA. Plaintiffs would have the statute cover any business that offers the type of goods or services offered by the places of public accommodation enumerated in the statute, regardless of whether the business operates a physical place where those goods or services are available to the public. That would sweep into the ambit of the ADA every Internet company, software developer, newspaper publisher, television network, sporting league, and other businesses that courts have held fall outside the purview of Title III.

Plaintiffs acknowledge, as they must, that their construction reads the language "person who . . . operates a place of" out of the statute entirely. They claim, nevertheless, that their construction is mandated by the Second Circuit's *Pallozzi v. Allstate Life Insurance Co.* That claim is readily refuted. *Pallozzi* did not even address the issue before this Court, much less hold that any business offering goods or services to the public is subject to Title III. It merely held that the goods and services *of a place of public accommodation* are subject to Title III, whether or not purchased or used within that place. The Court did not purport to define what "place of public accommodation" means, and certainly did not conclude that places of public accommodation go beyond the physical locations Congress enumerated.

Plaintiffs also invoke *dicta* from two other Circuit Courts, and a single district court case that relied on flawed reasoning and stands against the great weight of judicial authority. Beyond that, plaintiffs offer alternate dictionary definitions that make no sense in context, selective and

incomplete legislative history, informal DOJ statements that contradict the agency's formally adopted regulations, and yet to be adopted regulations, but none of this compels the construction of Title III that they seek. Finally, Plaintiff's claim that Scribd is covered by the ADA because it operates private computer servers, a position that if adopted would distort the statute beyond recognition. Regardless, the Complaint does not actually allege Scribd operates computer servers, and computer servers are not places of public accommodation.

Had Congress intended Title III to cover any business that offers goods or services to the public, it could easily have said so in 1990 when it passed the ADA, it could have said so in 1998 when it amended the Rehabilitation Act (on which the ADA is based) to cover federal websites, and it could have said so again in 2008 (after multiple courts had construed "place of public accommodation" as limited to a physical facility) when it enacted an amendment to change how courts were interpreting a different definition in Title III. But Congress has never done so. This Court should decline plaintiffs' request to construe the ADA in a way that Congress did not intend.

## **ARGUMENT**

### **I. TITLE III OF THE ADA REGULATES ONLY PERSONS THAT OWN, LEASE OR OPERATE A PHYSICAL "PLACE OF PUBLIC ACCOMMODATION"**

Title III of the ADA prohibits discrimination on the basis of disability "by any person who owns, leases (or leases to), or operates *a place* of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). The statute goes on to specifically define categories of "public accommodations." *Id.* § 12181(7). Thus, to fall within the purview of Title III, an entity must both operate[1] a place, and that place must fall within one of Congress' enumerated categories of public accommodations. There are no allegations in the Complaint making it plausible that Scribd is the operator of any such place. Def. Br. at 18-19.[2]

---

[1] We use "operate" and "operator" throughout as shorthand for a "person who owns, leases (or leases to), or operates a place of public accommodation." *See* 42 U.S.C. § 12182(a).

[2] We note that the "no set of facts" standard invoked by plaintiffs was expressly repudiated by the Supreme Court. *See Littlefield v. Concord Gen. Mut. Ins. Co.*, No. 2:10-cv-07, 2010 U.S. Dist. LEXIS 135861, at *4-6 (D. Vt. Dec. 22, 2010).

In opposition, plaintiffs argue that any entity that offers the goods or services offered by a category of "public accommodation" is covered by Title III, completely ignoring Congress' limitation of the statute to *operators of places of* public accommodation. *See, e.g.*, Opp. at 5 ("[I]t is the nature of the services Scribd provides that makes it a public accommodation[.]"); *id.* at 8-9. Under plaintiffs' view, any entity that sells anything or offers any service to the public qualifies as an "other sales establishment" or "other service establishment" and therefore is subject to Title III. That reads the language "operates a place of" out of the statute in violation of a basic tenet of construction that must be followed despite the ADA's broad remedial purpose. *See, e.g.*, *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 160 (2d Cir.), *cert. dismissed*, 133 S. Ct. 2823 (2013).

Plaintiffs argue that "place" has multiple dictionary definitions and that when there are alternate definitions that each makes sense under the statute, there is ambiguity. Opp. at 10. But plaintiffs have not come forward with an alternative definition of "place" that makes sense in this context. In setting forth categories such as "place of lodging," "place of exhibition or entertainment," "place of public gathering," "place of public display or collection," etc., Congress plainly did not use "place" in the sense suggested by plaintiffs: "position, situation, or circumstances." Opp. at 9-10. *Muscarello v. United States*, 524 U.S. 125, 128 (1998), on which plaintiffs also rely, makes clear that a court *should* consider primary dictionary definitions of a word in determining its common meaning – here "a building or area that is used for a particular purpose." It should not give a term used by Congress a different meaning, even a meaning often used in common parlance, where there is no indication that Congress intended such meaning at the time the statute was written. *See id.* at 132-33. Plaintiffs point to nothing indicating that at the time Title III was passed in 1990, Congress intended "place" to mean anything other than a physical place to which the public goes. Moreover, it is the ordinary meaning of the word at the time the statute was enacted that matters, not a broader definition later given to the same term.

*See Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2004 (2012).[3]

As Scribd pointed out, courts across the country, including the Third, Sixth and Ninth Circuits and the Eastern District of New York, have all accorded the phrase "place of public accommodation" its ordinary meaning -- a physical place within the listed categories of public accommodations. *See* Def. Br. at 3 n.1, 8-9. Other courts have readily determined that newspapers, sporting leagues, television networks and stations, and other private entities that offer goods and services to the public but not at a physical space are not subject to Title III. *Id.* at 5. That is so, even though these businesses offer goods and services that are the same as or similar to those offered by the physical places of public accommodation identified by Congress.

Remarkably, plaintiffs address these decisions in a single footnote and merely point out that with the exception of *Rome v. MTA/N.Y.C. Transit*, they are from outside the Second Circuit. Opp. Br. at 8 n.3. That is of little moment. Their reasoning is sound and plaintiffs have offered no compelling reason for this Court to depart from it and foster a split in the law that will create uncertainty for countless businesses across the country, including virtually all Internet and media companies.

## II. *PALLOZZI* DID NOT ADDRESS THE ISSUE BEFORE THIS COURT

Plaintiffs' main argument is that "[t]he Second Circuit has authoritatively addressed the core issue in this case" and that "[t]he Second Circuit held in *Pallozzi* that Title III applies to a business engaging in the kind of activity that would make it a public accommodation, regardless of whether that business also has a brick-and-mortar location that patrons can visit." Opp. at 2, 5-8. But the Second Circuit has done no such thing. It has never addressed whether a business that lacks a physical facility falling within Congress' categories of public accommodations is a "place

---

[3] Plaintiffs also argue that the doctrines of *noscitur a sociis* and *ejusdem generis* are not applicable here, but they do not cite a single case refusing to apply those doctrines in this context, and they fail to explain why they were improperly applied by the numerous courts cited by Scribd. Def. Br. at 12. Instead, plaintiffs invoke cases that support Scribd's position. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218 (2008) (relying on Congress' use of the word "any" as unambiguously meaning not to limit); *United States v. Pacione*, 738 F.2d 567, 569-70, 572 (2d Cir. 1984) (*applying* doctrine and limiting phrase at issue in light of Congress' failure to use the terms "any" or "all" to modify provision).

of public accommodation." Nor did *Pallozzi* hold that whether a defendant operates a "place of public accommodation" depends only on whether it offers the public the types of goods or services offered by a category of public accommodation. Rather, *Pallozzi* addressed whether Title III regulates the sale of insurance, and if so, whether a Title III claim can be maintained where the insurance policy at issue was purchased from the operator of insurance offices, but not within the office itself. It held "that Title III does regulate the sale of insurance policies in insurance offices, subject to the limitations of the safe harbor provision in Section 501(c) of Title V." 198 F. 28, 33 (2d Cir. 1999); *see Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 n.8 (2d Cir. 1999) ("[W]e have recently held in *Pallozzi* [] that an insurance office in its dealings with the public is a 'place of public accommodation' and is regulated by Title III[.]"). In no way did *Pallozzi* eliminate the need to determine in the first instance whether the defendant operates the place of public accommodation required to implicate Title III.

Plaintiffs' argument is based on misapprehensions of both the arguments presented and the Court's conclusions in *Pallozzi*. *First*, plaintiffs describe defendant Allstate as challenging whether it was an operator of a place of public accommodation. Opp. Br. at 6. But Allstate's actual argument was that "Congress intended the statute to ensure that the disabled have physical access to the facilities of insurance providers, not to prohibit discrimination against the disabled in insurance underwriting" and that "because insurance policies are not actually used *in* places of public accommodation, they do not qualify as goods and services '*of* [a] place of public accommodation.'" 198 F.3d at 32 (citation omitted). Everyone agreed that Allstate's physical insurance offices were places of public accommodation. *See, e.g.*, Br. for Def.-Appellee Allstate, 1998 WL 34088683, at *1 (July 13, 1998) (Opp. at App. 21). The argument plaintiffs advance here was never at issue. *Second*, the Court concluded that the ADA "was meant to guarantee [the disabled] more than mere physical access," 198 F.3d at 32, and that insurance policies are goods and services "of" a place of public accommodation and therefore are covered by the ADA, even though they are not used *in* an insurance office. *Id.* at 33. Plaintiffs' conclusion -- that "the

operation of an office open to the public is not a prerequisite for coverage under Title III," Opp. at 6 – simply does not follow from anything the Court even considered, much less held.

*Pallozzi* is not merely different than plaintiffs represent, it is affirmatively unhelpful to their position as it compels an interpretation of the ADA consistent with the overwhelming weight of authority. The *Pallozzi* Court went out of its way to explain that its decision was *consistent with* the Third and Sixth Circuit's requirement that to fall within the scope of Title III the alleged discrimination must have a direct nexus to a place of public accommodation. 198 F.3d at 32 n.3. The Second Circuit again endorsed the nexus approach in *Leonard F.*, 199 F.3d at 107 n.8, a point that plaintiffs concede. *See* Opp. at 7-8; s*ee also VanBrocklen v. Gov't Emps. Ins. Co. (GEICO)*, No. 1:08-CV-254, 2009 U.S. Dist. LEXIS 12158, at *7 (N.D.N.Y. Feb. 18, 2009) (reading *Pallozzi* as endorsing the nexus approach). This same approach is followed in the Ninth and Eleventh Circuits. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000); *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1283-84 & n.8 (11th Cir. 2002). [4] Thus, the approach taken by the Third, Sixth, Ninth and Eleventh Circuits is consistent with, and not "contrary to *Pallozzi*." Opp. at 8 n.3. In other words, *Pallozzi* supports Scribd's position, not that advanced by plaintiffs.

## III. PLAINTIFFS' REMAINING ARGUMENTS ARE UNPERSUASIVE

**Plaintiffs Rely on Dicta and a Lone Case That was Wrongly Decided**: While ignoring the large body of authority cited by Scribd, plaintiffs ask this Court to follow *dicta* from the First and Seventh Circuits, claiming that those cases were the foundation for *Pallozzi*. Opp. at 15-16. But *Pallozzi* merely cited *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 20 (1st Cir. 1994), with a "*cf.*" signal, for the proposition that the

---

[4] It also has been followed by district courts in the Eighth, Tenth, and Fourth Circuits. *See Elitt v. U.S.A. Hockey*, 922 F. Supp. 217, 224-25 (E.D. Mo. 1996); *Shepherd v. United States Olympic Comm.*, 464 F. Supp. 2d 1072 (D. Colo. 2006), *aff'd sub nom. Hollonbeck v. United States Olympic Comm.*, 513 F.3d 1191 (10th Cir. 2008); *Staley v. Nat'l Capital Area Council*, No. 10cv2768, 2011 U.S. Dist. LEXIS 61986, at *23-24 (D. Md. June 9, 2011). Plaintiffs are thus incorrect that only district courts "bound to follow" 9th and 11th Circuit precedent have construed "place of public accommodation" as limited to physical facilities. Opp. at 8 n.3.

ADA was meant to guarantee more than physical access. *Pallozzi*, 198 F.3d at 32. It cited *Doe v. Mut. Of Omaha Ins. Co.*, 179 F.3d 557, 559, 564 (7th Cir. 1999) for a similar conclusion. *Pallozzi*, 198 F.3d at 33. There is nothing in *Pallozzi* to suggest that the Second Circuit would follow *dicta* elsewhere in those decisions.[5] The only case plaintiffs cite that directly supports their position is *National Association of the Deaf v. Netflix, Inc.*, 869 F. Supp.2d 196 (D. Mass. 2012). As explained in our Opening Brief at 15-18, that case is contrary to authority around the country, and its reasoning is flawed and unpersuasive.

**The ADA's Legislative History Does Not Help Plaintiffs**: It is well-established that where Congress' language is clear, the Court should not rely on legislative history to reach a contrary outcome. *See, e.g., United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989). Because that is the case here, the Court need go no further. In any event, the legislative history of Title III actually supports Scribd's reading of the statute. One of the main goals of the ADA was to encourage individuals with disabilities to participate with the public outside of their homes.[6] Thus it makes sense that Congress did not include in its categories of public accommodations a host of businesses that provide goods or services to the public at home. Regulating such entities would not encourage individuals with disabilities to leave their homes and participate with the

---

[5] Indeed, the Second Circuit expressly agreed with the reasoning of the district court in *Leonard F.*, which rejected *Carparts* as "essentially *dictum* which flies in the face of the plain meaning of Title III and is not supported by the legislative history." *Leonard F. v. Israel Discount Bank of N.Y.*, 967 F. Supp. 802, 804 (S.D.N.Y. 1997), *vacated on other grounds by*, 199 F.3d 99, 100 (2d Cir. 1999).

[6] *See, e.g.*, *Americans with Disabilities Act of 1988: Joint Hearing Before the Subcommittees on the Handicapped and Select Education*, 100th Cong. 1001 (1988) ("Our concern is that [a person with a disability] will be sitting at home, on [a] living room couch, watching television for the rest of his life. That is not acceptable[.]"); *Oversight Hearing on H.R. 4498, Americans with Disabilities Act of 1988: Hearing Before the Subcommittee on Select Education*, 100th Cong. 1104 (1988) ("The Americans With Disabilities Act will ... enable more people to leave their homes and be participating citizens."); *Field Hearing on Americas with Disabilities Act: Hearing Before the Subcommittee on Select Education*, 101th Cong. 1507 (1989) ("We need to take another step to actively help more people with disabilities move out of the home environment[.]").

public. Moreover, when explaining the "and other" phrases at the end of several categories of public accommodations, Congress gave examples of only physical facilities open to the public. H.R. Rep. No. 101-485(II), at *99-100 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 382-83. Again this reflects Congress' intent to cover operators of such physical facilities. Had Congress intended the ADA to cover any business that offers goods or services to the public and that affects commerce, it could have easily said so.

It is not as if Congress has been inactive with respect to websites and the ADA. It actually did amend the Rehabilitation Act on which the ADA is based to extend its scope to federal websites. It also amended the ADA itself when courts were interpreting "disability" differently than Congress had intended. And Congress has repeatedly held hearings on the applicability of Title III to private commercial websites. But through all that, Congress has declined to amend Title III to include "websites" as a category of public accommodation. Def. Br. at 11-12. The fact that Congress has chosen not to amend the statute as plaintiffs would like in the face of numerous court opinions to the contrary, speaks far more loudly than any history that plaintiffs can muster. *See, e.g., Barnhart v. Walton*, 535 U.S. 212, 220 (2002) (fact that Congress made other amendments evidenced Congress' intent that law remain as it had been interpreted).

**The DOJ's Enacted Regulatory Definition Controls**: Although the DOJ has in recent years made statements supporting the interpretation that plaintiffs espouse, its official construction of "place of public accommodation" limits the term to concrete "facilities." Def. Br. at 10-11. For years the DOJ endorsed that construction.[7] This Court should not defer to the DOJ's new position under these circumstances.[8] *See AFSCME v. Am. Int'l Grp., Inc.*, 462 F.3d 121, 126 (2d

---

[7] *See, e.g., Preamble to Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities*, 28 C.F.R. Appendix B to Part 36 (1991); Letter from John L. Wodatch, DOJ, to Deborah C. Craytor, Esq. (July 8, 1992), *available at* http://www.justice.gov/crt/foia/readingroom/frequent_requests/ada_tal/tal128.txt; *Stevens v. Premier Cruises, Inc.*, No. 98-5913 (11th Cir. Mar. 24, 1999) (Br. for the U.S. as Amicus Curiae), *available at* http://www.justice.gov/crt/about/app/briefs/stevens.htm.

[8] Plaintiffs say the DOJ's position has been consistent, ignoring its formal regulation and relying on a single letter from 1996. Opp. at 17-18. But as the DOJ itself has explained, that letter "does not . . . state whether entities doing business exclusively on the Internet are covered by the ADA." *See* DOJ, Proposed Rule, *Nondiscrimination on the Basis of Disability; Accessibility of*
(continued...)

-8-

Cir. 2006) (making clear that courts should not defer to informal agency positions that are contrary to their own regulations); *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 151-52 (2d Cir. 2000) (declining to defer to EEOC informal guidance in tension with interpretation previously set forth in CFR). None of the cases cited by plaintiffs are to the contrary. Regardless, because the statutory language is clear on its face, any contrary position from an executive body is entitled to no deference. *See, e.g., Wong v. Doar*, 571 F.3d 247, 255-56 (2d Cir. 2009).

It is telling that the DOJ, while considering amending its Title III regulations to impose technical requirements for the websites of businesses that operate places of public accommodations, has yet to do so. And even with respect to the regulations under contemplation, there will be a period of public comment, a phase-in process, and likely exceptions for smaller businesses.[9] Plaintiffs seek to do away with all that and immediately impose on Scribd and the entire Internet industry massive and unspecified technical obligations that the law does not yet, and may never, impose on a start-up company like Scribd. In other words, plaintiffs seek from this Court relief that is premature at best. [10]

**Operation of a Place that Is Not a Public Accommodation Does Not Bring A Business Within Title III:** In a final effort to salvage their claim, plaintiffs half-heartedly argue that Scribd operates computer servers, computers are equipment, and "equipment" falls within the scope of the DOJ's definition of "facility," thus Scribd is subject to Title III. Opp. at 20-22. This

---

(...continued from previous page)
*Web Information and Services of State and Local Government Entities and Public Accommodations*, 75 Fed. Reg. 43460, 43464 (July 26, 2010).

[9] The DOJ has explained that it "intends to consider various alternatives for ensuring full access to websites of public accommodations, including alternative implementation schedules and technical requirements applicable to certain Web features or based on a covered entity's size. The Department will solicit public comment addressing its proposed alternatives." *Unified Regulatory Agenda, Proposed Rule Stage*, 28 C.F.R. 36 (Nov. 25, 2014), *available at* http://www.adatitleiii.com/files/2014/11/aa61.pdf (last visited January 21, 2015).

[10] While plaintiffs allege they encounter barriers when accessing Scribd's website (Compl. ¶ 9), the DOJ's regulations only require the removal of architectural barriers in physical facilities, 28 C.F.R. 36.304, and they specifically do not require a place of public accommodation to provide brailed or audio books, except under circumstances not alleged here. *Id.* at 36.303; *see also* 75 Fed. Reg. at 43463 (DOJ statement acknowledging that "neither the ADA nor the regulations the Department promulgated under the ADA specifically address access to Web sites.").

argument fails out of the box because there is no allegation in the Complaint that Scribd operates computer servers. Moreover, this argument again divorces the two requirements for a business to be subject to Title III: that it is an "operator of a place" and that such place is a place "of public accommodation." Even if Scribd operated equipment that falls within the definition of "facility," that does not end the inquiry. As the DOJ's existing regulations recognize, a place of public accommodation is "a facility operated by a private entity whose operations affect commerce *and* fall within at least one of the [12] categories" enumerated by Congress. Nowhere in Congress' categories are computer servers referenced. *See* 42 U.S.C. § 12181(7). Nor are private computers housed in a private location anything like Congress' enumerated categories of public accommodations. Because computer servers are nothing like the enumerated categories of public accommodations, the mere use of computer servers (even if properly alleged) does not bring Scribd within the scope of Title III. *See, e.g.*, *Bobrowsky v. Curran*, 333 F. Supp. 2d 159, 163 (S.D.N.Y. 2004) (electronically operated gate is not a "place of public accommodation" because it "does not fall into any of the categories set forth in § 12182."); *Reyes v. Fairfield Props*., 661 F. Supp. 2d 249, 264 n. 5 (E.D.N.Y. 2009) (private, residential apartment complex not a place of public accommodation because unlike specified public accommodations).

## CONCLUSION

Scribd does not operate a "place of public accommodation" as currently defined by Title III of the ADA and its implementing regulations. Accordingly, plaintiffs have failed to state a claim against it for violation of Title III, and plaintiffs' complaint should be dismissed with prejudice.

Dated: January 22, 2015                    Respectfully submitted,

                                           By:   s/ Gary F. Karnedy

                                           Gary F. Karnedy
                                           PRIMMER PIPER EGGLESTON & CRAMER
                                           Professional Corporation
                                           150 South Champlain Street
                                           P.O. Box 1489
                                           Burlington, Vermont 05401
                                           Telephone: (802) 864-0880
                                           Facsimile: (802) 864-0328

Email: gkarnedy@primmer.com

Tonia Ouellette Klausner (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7700
Facsimile: (212) 999-5899
Email: tklausner@wsgr.com

*Counsel for Defendant Scribd Inc.*